IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHERYL Y. R.,[1]

      Plaintiff,

v.

COMMISSIONER of SOCIAL SECURITY,

      Defendant.

Case No. 19-cv-370-RJD[2]

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Income Security (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in December 2015, alleging disability as of November 16, 2015. After holding an evidentiary hearing, an ALJ denied the application on December 26, 2017. (Tr. 15, 25). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 12 & 27.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ failed to properly consider Step 2 within her five-step analysis.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform.

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

*Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. She determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. She was insured for DIB through June 30, 2019.

The ALJ found that plaintiff has severe impairments of degenerative disc disease, degenerative joint disease, and plantar fasciitis.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work

at the light exertional level limited to occasionally climbing ramps, stairs, ladders, ropes and scaffolds, and frequently stooping, kneeling, crouching and crawling.

Based on the testimony of a vocational expert, the ALJ concluded that plaintiff is capable of performing past relevant work.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to plaintiff's arguments.

**1. Agency Forms**

Plaintiff was born in 1969 and was 48 years old on the date of the ALJ's decision. (Tr. 211). She worked as a "Table Games Dealer/Supervisor" from October 2013 to August 2014, a "Warehouse Worker" from May 2015 through November 2015, and a "Lacer" from October 2015 to November 2015. (Tr. 215).

In a Function Report submitted in January 2016, plaintiff said she isolates herself in her room. She said she has no desire or motivation to do anything besides lay in bed on her heating pad. She said she does not want to be around people and feels completely depressed. She said she follows written instructions, spoken instructions, and gets along with authority figures very well. She said she does not handle stress or changes in routines well. (Tr. 238-239, 241-243).

**2. Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in October 2017. (Tr. 39). Only physical impairments were discussed at this hearing, and mental impairments were neither mentioned nor discussed by plaintiff, her counsel, or the ALJ. (Tr. 39-64).

A vocational expert (VE) testified that a person with plaintiff's RFC could perform their past work of a dealer and retail marker. The ALJ presented hypotheticals to the VE which corresponded to the ultimate RFC findings. (Tr. 62-63).

### 3.     Relevant Medical Records

Between August 2012 and November 2015, plaintiff presented six times to Southern Illinois Healthcare Foundation (SIHF) in Belleville, Illinois and three times to St. Elizabeth's Hospital. (Tr. 319, 322, 357, 367, 383, 463, 473, 476, 480). The providers noted plaintiff was oriented to time, place, person and situation, had a normal mood and affect, had normal insight and judgment, and had intact memory at various appointments. (Tr. 320, 324, 359, 369, 383, 464, 474, 478, 483). At one appointment, plaintiff reported no depression. (Tr. 324).

Plaintiff presented to Shannon Witty, a family medicine physician, on January 26, 2016, reporting depression and sleep disturbances. Dr. Witty noted plaintiff was active, alert, tearful, sad, oriented to time, place and person, and had normal recent and remote memory. (Tr. 423, 425). Dr. Witty's assessment included depressive disorder and labeled it as a "New Problem." Dr. Witty noted plaintiff was tearful within a minute of the interview while discussing how she moved in with her mother. Dr. Witty noted plaintiff spends most of her time in her room to avoid interacting, and she is sad most days. Plans included daily exercise and starting medication. (Tr. 423).

Harry Deppe, a licensed clinical psychologist, performed a consultative psychological exam on March 10, 2016. Plaintiff said she had never been treated on an inpatient or outpatient basis for mental health symptoms but was prescribed Citalopram 20 mg by her family physician. She said, "Sometimes I get depressed about having to be dependent on my mom." Plaintiff's

mood appeared normal, but she became upset when talking about living with her mother. She had fair eye contact, gave a fair effort when answering questions, had clear and fluent expressive verbalizations, and had normal and sometimes exaggerated facial expressions and body mannerisms. Dr. Deppe noted no thought disorders, and said she was oriented to time, place and person, she had a good fund of general knowledge, good recent and remote memory, and adequate judgment and insight. (Tr. 348-349). Dr. Deppe rated plaintiff as "Fair" in her ability to understand and follow simple instructions, ability to maintain attention required to perform simple, repetitive tasks, and her ability to withstand the stress and pressures associated with a day-to-day work activity. Dr. Deppe rated plaintiff as "Fair to good" in her ability to relate to others, including fellow workers and supervisors. (Tr. 349). Her diagnoses included adjustment disorder. (Tr. 350).

Plaintiff presented to Vittal Chapa, an internist, for a consultative physical exam on March 10, 2016, and she reported feeling depressed. (Tr. 352).

Between March and April 2016, plaintiff presented to both St. Elizabeth's Hospital and Alex LaBounty, a family medicine physician. (Tr. 388, 399, 420). On two occasions, plaintiff reported psychosocial problems including depression. The providers noted plaintiff was active, alert and oriented, and had a normal mood and affect at the appointments. (Tr. 389, 391, 400-401, 422).

Plaintiff presented to Dr. Witty on May 4, 2016. She reported her depression improved, and she was seeing a counselor. (Tr. 418). Dr. Witty noted plaintiff was active and alert, not tearful, oriented to time, place and person, had normal recent and remote memory, and had normal movement of all extremities. (Tr. 420). The assessment included depressive disorder, and plans

included stopping Citalopram, starting Venlafaxine, and continuing counseling. (Tr. 418).

Plaintiff presented to Stacy Jefferson, a family medicine physician, on August 18, 2016, complaining of depressive symptoms secondary to living with her mother and unemployment. (Tr. 499, 502). Plaintiff reported she voluntarily stopped taking her anti-depressant medication about a month prior because it made her feel dizzy and sluggish. Dr. Jefferson noted plaintiff was active, alert and depressed, was oriented to time, place and person, and had good judgment. The assessment included depressive disorder, and plans included Venlafaxine and counseling continuation. (Tr. 502-503).

Plaintiff presented to Rachelle Hinchey, a qualified mental health professional (QMHP), for a mental health integrated assessment on October 27, 2016, complaining of depression symptoms because of living with her mother which has significantly damaged her self-worth. Goals included individual therapy services, medication services, better management of depression, better mood, an ability to interact with others, and gaining her identity and independence back. (Tr. 547). QMHP Hinchey noted plaintiff's depression symptoms include sadness, crying spells, transient suicidal ideation, feelings of hopelessness, helplessness and low self-worth, difficulty sleeping, decreased frustration tolerance, difficulty focusing, low motivation, feeling numb, and some preoccupation with death. (Tr. 549). QMHP Hinchey noted plaintiff has difficulties in general functioning and social adjustment due to a decreased and increased appetite, binge eating/purging, decreased frustration tolerance, difficulty functioning in unstructured environments, impaired interpersonal boundaries/skills, difficulty getting to sleep, multiple awakenings at night, reduced ability to provide for her own needs, and isolating behavior. QMHP Hinchey noted plaintiff has difficulties with communication, initiating socialization, dressing

herself, dressing appropriately, shopping, recreation, maintaining a healthy lifestyle, and managing work responsibilities. (Tr. 548). The diagnosis included major depressive disorder, and recommendations included psychiatric evaluation, medication services, individual therapy, and community support. (Tr. 549).

Plaintiff presented to Dr. Jefferson in November 2016 and January 2017, and Dr. Jefferson noted plaintiff was active and alert, had good judgment, and had a normal mood and affect. (Tr. 496, 498). The assessment included depressive disorder, and plans included medication for depression and therapy. (Tr. 499).

QMHP Hinchey evaluated plaintiff on November 28, 2016, for a mental source statement. QMHP Hinchey noted plaintiff has a fair ability to relate to co-workers, deal with the public, use judgment, and function independently. She noted plaintiff has a good ability to follow work rules and interact with supervisors. She noted plaintiff has poor to no ability to deal with work stresses and to maintain attention/concentration. (Tr. 451). QMHP Hinchey noted plaintiff's life has been seriously impacted by her depression. Plaintiff reported sadness, crying spells, low motivation, difficulty focusing, racing thoughts, increased frustration, suicidal thoughts, difficulty being around crowds, and withdrawal from friends and family. (Tr. 452). QMHP Hinchey noted plaintiff has a fair ability to maintain personal appearance, behave in an emotionally stable manner, and relate predictably in social situations. QMHP Hinchey noted plaintiff has a good ability to demonstrate reliability and said plaintiff may have some difficulty concentrating and staying on task. (Tr. 453).

Plaintiff presented to Ella Wilson, a qualified mental health professional, for a psychiatric evaluation on January 25, 2017, complaining of depressive disorder. Her triggers included having

no income and her body affecting her ability to go back to work. She dealt with hopelessness, feelings of unworthiness, helplessness, anger, decreased pleasure, and crying spells. She described her depression, anger, and mood swings at a ten out of ten. She reported sleeping for eight hours, staying up late and getting up late to shorten her days, and not wanting to get up. She reported having suicidal ideations and wanting to beat her daughter up. She was unable to recall the psychotropic medications her primary care physician gave her because she was no longer taking them. (Tr. 550-551). Plans and recommendations included medication, vitamin D, exercising, and not watching much news. (Tr. 554).

Plaintiff had a psychiatric follow-up with QMHP Wilson on March 1, 2017. Plaintiff reported compliance with her medications. She said she sleeps two to five hours and then naps throughout the day. She rated her depression as a ten out of ten with income as the trigger. (Tr. 556). Plans and recommendations included medication management, getting lab work done, and returning in a month. (Tr. 559).

Plaintiff presented to Roula AlDahhak, a neurologist, on April 26, 2017, and plaintiff reported tiredness, fatigue, headache, sleep disturbances, and depression. (Tr. 568). Dr. AlDahhak noted plaintiff was alert, awake, responsive, attentive, and oriented to time, place and person. (Tr. 569).

Plaintiff presented to Dr. Jefferson in April and May 2017, and Dr. Jefferson noted plaintiff was active and alert. She had good judgment and a normal mood and affect. (Tr. 492, 576, 578).

## Analysis

Plaintiff argues that the ALJ erred in not identifying depression as a severe impairment at Step 2 and that error consequently changed the outcome of the case. Plaintiff acknowledges that

a failure to find an impairment as "severe" during Step 2 can be harmless error, but plaintiff alleges the problem occurred where the ALJ failed to consider any mental impairment limitations in her RFC assessment.

The failure to designate depression as a severe impairment, by itself, is not an error requiring remand. At Step 2 of the sequential analysis, the ALJ must determine whether the claimant has one or more severe impairments. This is only a "threshold issue," and, as long as the ALJ finds at least one severe impairment, she must continue on with the analysis. And, at Step 4, she must consider the combined effect of all impairments, severe and non-severe. Therefore, a failure to designate a particular impairment as "severe" at Step 2 does not matter to the outcome of the case as long as the ALJ finds that the claimant has at least one severe impairment. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012), citing *Castile v. Astrue*, 617 F.3d 923, 927-928 (7th Cir. 2010).

The ALJ found plaintiff has severe impairments of degenerative disc disease, degenerative joint disease, and plantar fasciitis. Of course, regardless of the designation of impairments as severe, the ALJ is required to consider the combined effects of all impairments in determining plaintiff's RFC. "When assessing if a claimant is disabled, an ALJ must account for the combined effects of the claimant's impairments, including those that are not themselves severe enough to support a disability claim." *Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018). The ALJ did this at Tr. 18 where she explained that plaintiff's mental health impairment of affective disorder was non-severe as it "does not cause more than minimal limitation in her ability to perform basic mental work activities." Additionally, the ALJ discussed plaintiff's mental health symptoms at Tr. 23 and 24 in regard to plaintiff's mother's Third Party Function Report and the medical

opinions. She explained why she gave little, partial, and limited weight to some and great weight to others. The ALJ explained her decision by saying, "The residual functional capacity has been assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments" at Tr. 20. She also specified that her decision was based off objective evidence, plaintiff's activities of daily living, the hearing testimony, and the record as a whole. (Tr. 23-24). Therefore, the ALJ did assess mental limitations.

Additionally, the medical records support the ALJ's conclusions that depression was not a severe impairment. The medical records reflect numerous mental status exams that were essentially normal. The medical records also show plaintiff improved while on medication, and she worsened after stopping her medication at times as she returned to her providers with mental health complaints.

Plaintiff argues that the ALJ should have evaluated whether plaintiff's hand and wrist pain was psychogenic resulting from depression had the ALJ properly considered depression at Step 2. However, no medical records reflect an opinion that plaintiff's hand and wrist pain was related to her depression, and the ALJ would commit reversable error by playing doctor if she decided upon that herself.

This Court agrees with defendant that the ALJ did consider evidence regarding plaintiff's potential mental impairment, including objective evidence, plaintiff's subjective allegations, and opinion evidence, and, therefore, the ALJ's decision was supported by substantial evidence. Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. She has not identified a sufficient reason to overturn the ALJ's conclusion. Even if reasonable minds

could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester*, 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATED: March 11, 2020.**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**